IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAWN HANSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 15 C 5354 |
| | ) | |
| MILTON TOWNSHIP, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' partial motion to dismiss. For the reasons stated below, the partial motion to dismiss is granted.

## BACKGROUND

Plaintiff Dawn Hanson (Hanson), Plaintiff Christine Fernald (Fernald), Plaintiff Deborah Hansen, Plaintiff Leanne Muscari, and Plaintiff Cathy Zinga were allegedly employed by Defendant Milton Township (Township) as deputy assessors (collectively referred to as "Deputy Assessors"). Plaintiff Phillip Popa (Popa) was allegedly employed by the Township as an Information Technology Administrator. In April 2013, Defendant Chris Levan (Levan) was allegedly elected as the Township Assessor. On January 1, 2014, Levan allegedly took office. On January

1

3, 2014, Levan allegedly terminated Plaintiffs' employment due to their support of the prior Assessor during the April 2013 election. Plaintiffs include in their second amended complaint claims brought under 42 U.S.C. § 1983 (Section 1983) alleging retaliation in violation of their First Amendment rights (Count I), Section 1983 equal protection claims based upon age discrimination (Count II), claims alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq.* (Count III), claims alleging age discrimination in violation of the Illinois Human Rights Act (IHRA), 775 ILCS 5/1-101 *et seq.* (Count IV), claims alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (Count V), claims alleging violations of the Illinois Minimum Wage Law (IMWL), 820 ILCS 105/1 *et seq.* (Count VI), claims alleging violations of the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS 115/1 *et seq.* (Count VII), claims alleging discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (Count VIII), ADA retaliation claims (Count VIII), and Section 1983 equal protection claims based upon disability discrimination (Count VIII). Defendants move to dismiss the FLSA claims (Count V), the IHRA claims (Count VI), and the equal protection claims based on a disability (Count VIII). Defendants move to dismiss the claims brought by the Deputy Assessors. Defendants have not sought to dismiss the claims brought by Popa, the IWPCA claims in Count VII, or the ADA claims in Count VIII. (Mem. Dis. 3).

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,' and that '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

## DISCUSSION

I.  Deputy Assessors' First Amendment Retaliation Claims

Defendants move to dismiss the First Amendment retaliation claims brought

3

by the Deputy Assessors, arguing that the Deputy Assessors were exempted from the First Amendment protection based on their political affiliation because they held the positions with policymaking powers. A public employee who is not in a "policymaking position" is protected by the First Amendment from "being removed from public employment for purely political reasons . . . ." *Zerante v. DeLuca*, 555 F.3d 582, 584-85 (7th Cir. 2009); *see also Bisluk v. Hamer*, 800 F.3d 928, 933 (7th Cir. 2015)(explaining that except for policymaking positions, "[t]he First Amendment prohibits discrimination against public employees based on the employees' political association"). To show that the policymaking position exception is applicable, a defendant must establish that "party affiliation is an appropriate requirement for the effective performance of the public office involved." *Embry v. City of Calumet City, Ill.*, 701 F.3d 231, 235-36 (7th Cir. 2012)(stating that "[p]olitical allegiance is a valid job requirement when the position authorizes, either directly or indirectly, meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation")(citing *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980)). In determining whether a position is a policymaking position, the court should consider factors such as: (1) whether the "employee exercises broad discretionary power," (2) "the powers inherent in the office," and (3) whether the employee has "responsibilities that are not well defined or are of broad scope." *Id.*; *Davis v. Ockomon*, 668 F.3d 473, 477 (7th Cir. 2012)(stating that "a public official is considered a policymaker where the position authorizes, either directly or indirectly,

4

meaningful input into government decisionmaking on issues where there is room for principled disagreement on goals or their implementation"); *see also Opp v. Office of State's Attorney of Cook Cty.*, 630 F.3d 616, 620 (7th Cir. 2010)(stating that "a court is to examine the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office, . . . emphasiz[ing] the functions of the office involved, not the officeholder")(internal quotations omitted)(quoting *Tomczak v. City of Chicago*, 765 F.2d 633, 640-41 (7th Cir. 1985)). Although discretion is an important consideration, the Seventh Circuit has acknowledged that "[a]lmost all jobs in government require individuals to exercise at least some level of discretion, resulting in somewhat arbitrary line-drawing based on how much discretion is authorized," and "positions requiring the exercise of professional rather than political discretion do not properly fall within the policymaker exception. . . ." *Davis*, 668 F.3d at 477 (stating that "both the amount and type of discretion authorized are relevant"); *see also Embry*, 701 F.3d at 236 (stating that "[d]iscretion is also important").

The court begins its policymaking position inquiry by examining any municipal or state ordinance that addresses the position. *Davis*, 668 F.3d at 478 (stating that "[t]he starting point of our inquiry should be the ordinances, and not the job description, because [u]nlike job descriptions, which may bear little resemblance to a position's actual duties, the ordinance's terms are not open to contest")(internal quotations omitted)(quoting *Walsh v. Heilmann*, 472 F.3d 504, 505 (7th Cir. 2006)). The court then considers the job description, "to the extent it is consistent with

5

pertinent statutes or ordinances . . . ." *Id.* (stating that the job description "may be relevant in providing greater detail of a position's duties and thus assisting in the determination of whether a position is best characterized as a policymaker or confidential employee," but that "a job description cannot be relied upon to the exclusion of a potentially conflicting statute or ordinance establishing a position's duties because any conflict between the two would have to be resolved in favor of the statute or ordinance"). The Illinois Property Tax Code provides the following regarding the duties of an assessor and deputy assessor:

> Valuation in general assessment years. On or before June 1 in each general assessment year in all counties with less than 3,000,000 inhabitants, and as soon as he or she reasonably can in each general assessment year in counties with 3,000,000 or more inhabitants, or if any such county is divided into assessment districts as provided in Sections 9-215 through 9-225, as soon as he or she reasonably can in each general assessment year in those districts, *the assessor, in person or by deputy*, shall actually view and determine as near as practicable the value of each property listed for taxation as of January 1 of that year, or as provided in Section 9-180, and assess the property at 33 1/3% of its fair cash value, or in accordance with Sections 10-110 through 10-140 and 10-170 through 10-200, or in accordance with a county ordinance adopted under Section 4 of Article IX of the Constitution of Illinois. *The assessor or deputy* shall set down, in the books furnished for that purpose the assessed valuation of properties in one column, the assessed value of improvements in another, and the total valuation in a separate column.

35 ILCS 200/9-155 (emphasis added). In *People ex rel. Cutmore v. Harding*, 164 N.E. 827 (Ill. 1929), the Illinois Supreme Court interpreted similar language in the former Illinois Revenue Act and to mean that a deputy assessor "is *pro hac vice* the assessor and his act is in law the act of the assessor," concluding that "[t]he deputy

6

assessor has the same authority to make the assessment of real property as his principal." *Id.* at 829. Plaintiffs, acknowledging the fact that *Cutmore* is not consistent with their position, make various attempts to minimize its importance arguing that the case is too old, that it contains mere dicta, and that technology has changed since the ruling in that case, rendering it obsolete. However, *Cutmore* remains good law at this juncture. Plaintiffs have not pointed to any controlling precedent that holds otherwise or that is directly on point. Plaintiffs point to a case in this district with similar facts that proceeded to trial after a remand. (Resp. 9). However, Plaintiffs have not shown that the policymaking issue was ever presented before the district court or the Seventh Circuit in that case.

The Seventh Circuit has addressed an analogous situation in *Kline v. Hughes*, 131 F.3d 708 (7th Cir. 1997). The Seventh Circuit was presented with the issue of whether under Indiana law, a deputy county auditor was a policymaking position, thus barring the plaintiff's First Amendment claims. *Id.* at 709. The Seventh Circuit concluded that "[u]nder Indiana law, a deputy county auditor may perform all the official duties of the county auditor," and that the "arrangement makes clear that the office of deputy auditor plays a vital role in the implementation of the county auditor's policies." *Id.* at 710. The Seventh Circuit concluded that the "statutory scheme places the deputy county auditor in a position that carries with it the inherent ability to have meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation." *Id.* Similarly, in the instant action, the Illinois statutory scheme and Illinois court

7

precedent make clear that the deputy assessor position plays a part in the implementation of an assessor's polices and has a meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation. As in *Kline*, which dealt with a deputy auditor position, under Illinois law, a deputy assessor position is likewise a policymaking position. Plaintiffs have not shown that there are any material distinctions between the Illinois and Indiana statutory schemes.

Plaintiffs argue extensively that the Deputy Assessors did not actually implement or create policy. Plaintiffs argue, for example, that the prior assessor considered the Deputy Assessors to only be the "worker bees of the office" and that they were not authorized by the assessor to advise on matters of policy in his absence. (Resp. 4). However, as explained above, the pertinent focus must be upon the powers inherent in the office, not whether such powers were actually utilized in the position. *See Embry*, 701 F.3d at 235-36 (stating that the court must consider "the powers inherent in the office . . . even if the employee never actually exercises those powers"). Plaintiffs also make various arguments about how the Illinois statutes provide for a chief deputy assessor position. However, as Defendants correctly point out, there is no such position in the statutes at the township level. Plaintiffs also point to various other statutory sections that are only applicable to counties of 3,000,000 or more people and county assessment offices thus are not applicable in this case involving a township in DuPage County. *See* 35 ILCS 200/3-55 (stating that the "county assessor in counties with 3,000,000 or more

8

inhabitants shall appoint one chief deputy assessor"); 35 ILCS 200/3-60 (stating that "[t]he county assessor in counties with less than 3,000,000 inhabitants which elect a county assessor under Section 3-45 may employ a chief deputy and other clerical help as may be necessary"); *see also* 35 ILCS 200/3-55 (indicating deputy assessors not in Cook County are not subject to civil service regulations); *Harris v. Eckersall*, 771 N.E.2d 1072, 1073 (Ill. App. Ct. 2002)(indicating that employees working for a township assessor are at will employees). Therefore, Defendants' motion to dismiss the First Amendment retaliation claims brought by the Deputy Assessors is granted.

II. Deputy Assessors' Equal Protection Claims

Defendants move to dismiss the equal protection claims brought by the Deputy Assessors. The equal protection clause of the federal constitution "protects individuals against intentional, arbitrary discrimination by government officials." *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 577 (7th Cir. 2014). An equal protection claim brought against a government entity is "subject to rational basis review," meaning that the "equal protection challenge cannot succeed if there is any reasonably conceivable state of facts that could provide a rational basis for the" governmental action. *Chasensky v. Walker*, 740 F.3d 1088, 1097 (7th Cir. 2014)(internal quotations omitted)(quoting *F.C.C. v. Beach Commc'n, Inc.*, 508 U.S. 307, 313 (1993)). In the instant action, Defendants have shown that the deputy assessor position is a policy-making position. Defendants thus had a rational basis to replace the Deputy Assessors based upon the election of a new Township assessor.

9

*See Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999)(stating that "[p]olitical affiliation is an appropriate criterion for public employment when the effective operation of government would be compromised by requiring a public official to retain a potential political enemy in a position of responsibility"). Therefore, Defendants' motion to dismiss the equal protection claims brought by the Deputy Assessors is granted.

III. ADEA, IHRA, FLSA, and IMWL Claims

Defendants argue that the Deputy Assessors cannot bring ADEA claims, IHRA claims, FLSA claims, or IMWL claims since they are in a policymaking position. The ADEA defines an employee entitled to its protections as "an individual employed by any employer except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office." 29 U.S.C. § 630(f). The IHRA's definition of an employee does not include "[e]lected public officials or the members of their immediate personal staffs," or "[p]rincipal administrative officers of the State or of any political subdivision, municipal corporation or other governmental unit or agency." 775ILCS 5/2-101(A)(2). The FLSA's definition of an employee does not include "any individual employed by a State, political subdivision of a State, or an interstate governmental

agency, other than such an individual . . . who is not subject to the civil service laws of the State, political subdivision, or agency which employs him," and who "holds a public elective office of that State, political subdivision, or agency, . . . is selected by the holder of such an office to be a member of his personal staff," or "is appointed by such an officeholder to serve on a policymaking level." 29 U.S.C. § 203(e)(2). The IMWL's definition of an employee does not include persons excluded from the definition of an employee under the FLSA. 820 ILCS 105/4a(2). In the instant action, Deputy Assessors were in a policymaking position and part of the immediate personal staff of the Township assessor, who is in an elected position. Therefore, Defendants' motion to dismiss the ADEA claims, IHRA claims, FLSA claims, and IMWL claims brought by the Deputy Assessors is granted.

## CONCLUSION

Based on the foregoing analysis, Defendants' partial motion to dismiss is granted.

                                                _____
                                                Samuel Der-Yeghiayan
                                                United States District Court Judge

Dated: April 6, 2016