IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAWN HANSON, CHRISTINE FERNALD, DEBORAH HANSEN, LEANNE MUSCARI, PHILLIP POPA, and CATHY ZINGA individually and on behalf of all other similarly situated employees,<br><br>Plaintiffs,<br><br>v.<br><br>CHRIS LEVAN, individually and in his official capacity as Milton Township Assessor, and MILTON TOWNSHIP,<br><br>Defendants. | Case No. 15-cv-5354<br><br>Judge Robert M. Dow, Jr. |

## ORDER

Currently before the Court is Plaintiffs second motion for reconsideration [106] of the Court's April 6, 2016 Memorandum Opinion and Order [43] and January 24, 2017 Order [60]. Plaintiffs request that the Court "find that township deputy assessors are not policymakers strictly as a matter of law, deny Defendants' Motion to Dismiss and reinstate Plaintiffs' Count I First Amendment Retaliation claims for further proceedings." [106] at 1. For the reasons explained below, Plaintiffs' motion is granted. This case is set for status hearing on October 23, 2018 at 9:45 a.m.

## STATEMENT

The Court takes the following facts from Plaintiffs' governing third amended complaint [65]. Defendant Milton Township ("Township") is a township organized under the Illinois Township Code and located in DuPage County, Illinois. The Milton Township Assessor's Office ("Assessor's Office") is an arm of the Township. Plaintiffs were Assessor's Office employees until they were terminated on January 3, 2014. More specifically, Plaintiffs Dawn Hansen, Christine Fernald, Deborah Hansen, Leanne Muscari, and Cathy Zinga worked as Deputy Assessors in the Assessor's Officer from 2006 or 2007 until January 3, 2014. They are all Certified Illinois Assessing Officers ("CIAOs"). Plaintiff Popa worked as an IT Administrator in the Milton Township Assessor's Office from 2007 until January 3, 2014.

Defendant Chris LeVan was elected to the office of Milton Township Assessor in April 2013 and took office on January 1, 2014. Plaintiffs alleges that LeVan "is a policymaker responsible for overseeing government operations including but not limited to the hiring and termination of Assessor's Office employees." [65] at 4. LeVan's predecessor was Bob Earl, who

served as Milton Township Assessor from January 2006 until LeVan took office. The complaint alleges that Earl and the Township Supervisor, Chris Heidorn, became political adversaries in 2012. Heidorn recruited LeVan to run against Earl for Township Assessor. Heidorn endorsed and promoted LeVan before the DuPage Republican Committee ("DRC") to gain the DRC's endorsement and prevent Earl from getting the endorsement. The DRC endorsed LeVan. Plaintiffs publicly supported Earl or were perceived by LeVan and Heidorn as having supported Earl. Plaintiffs publicly opposed LeVan for Township Assessor.

LeVan was elected in the April 2013 election, with his term to begin on January 1, 2014. The complaint alleges that, shortly after the election, LeVan began hiring certain individuals, including family members and Heidorn's political allies, to replace Plaintiffs. Around October 2013, Heidorn informed Plaintiffs that they were going to be discharged from their employment at the Assessor's Office. According to the complaint, Heidorn was purportedly acting on behalf of LeVan. The complaint alleges that "Heidorn specifically told Hansen that she would be terminated once LeVan took office because she was an Earl supporter and LeVan had some 'political favors' that needed to be met—meaning that her job been promised to a LeVan supporter." [65] at 7. As soon as LeVan took office at the beginning of 2014, Plaintiffs were formally discharged from their positions at LeVan's behest. LeVan terminated 7 of 10 employees in the Assessor's office. All of the terminated employees were Earl supporters. LeVan immediately began hiring employees who supported his election bid.

In Count I of their complaint, which is the only count at issue here, Plaintiffs allege that Defendants violated the First Amendment by terminating their employment in retaliation for supporting Earl in the election. Defendants moved to dismiss the First Amendment claim (along with other claims) on the basis that the position of Deputy Assessor is a policymaking position and, therefore, Plaintiffs' political affiliation was an appropriate criterion for employment as a Deputy Assessor and a valid basis on which to terminate Plaintiffs under applicable First Amendment precedent.

Judge Der-Yeghiayan, to whom this case previously was assigned, granted Defendants' motion to dismiss the First Amendment retaliation claim as to the Deputy Assessor Plaintiffs. See [43]. Judge Der-Yeghiayan agreed with Defendants that the Deputy Assessor position is inherently a policy-making position and, therefore, Deputy Assessors are subject to being removed from public employment for political reasons. Judge Der-Yeghiayan began his analysis with a section of the Illinois Property Tax Code, which provides:

> Valuation in general assessment years. On or before June 1 in each general assessment year in all counties with less than 3,000,000 inhabitants, and as soon as he or she reasonably can in each general assessment year in counties with 3,000,000 or more inhabitants, or if any such county is divided into assessment districts as provided in Sections 9-215 through 9-225, as soon as he or she reasonably can in each general assessment year in those districts, *the assessor, in person or by deputy*, shall actually view and determine as near as practicable the value of each property listed for taxation as of January 1 of that year, or as provided in Section 9-180, and assess the property at 33 ⅓ % of its fair cash value, or in accordance with Sections 10-110 through 10-140 and 10-170 through 10-200, or in accordance with a county

> ordinance adopted under Section 4 of Article IX of the Constitution of Illinois. *The assessor or deputy* shall set down, in the books furnished for that purpose the assessed valuation of properties in one column, the assessed value of improvements in another, and the total valuation in a separate column.

35 ILCS 200/9-155 (emphasis added). Judge Der-Yeghiayan found that this statutory language, which authorizes deputy assessors to perform assessments, was similar to the language at issue in *People ex rel. Cutmore v. Harding*, 164 N.E. 827 (Ill. 1929). In *Cutmore*, the issue was whether deputy assessors should be considered "clerks," who were entitled to higher compensation pursuant to statute. The Illinois Supreme Court held that deputy assessors could not be considered clerks, because "[t]he deputy assessor has the same authority to make the assessment of real property as his principal" and "is pro hac vice the assessor and his act is in law the act of the assessor." *Id*. The court came to this conclusion based on statutory language providing that that "the assessor shall, before the first day of June in the year 1899 and every fourth year thereafter, in person *or by his deputy*, actually view and determine as near as practicable the value of each tract or lot of land listed for taxation as of the first day of April of each year, and assess the same at the value required by law, setting down the sum in proper columns prepared therefor in duplicate books furnished him." *Id*. at 829 (emphasis added). The court concluded that "[c]alling him a clerk, *** while the duties imposed on him are those of a deputy, requiring examination, discretion, judgment, and determination of value, does not make him a clerk, or authorize him to receive, instead of the compensation which may be provided by law for a deputy, the higher compensation which may be authorized for a clerk." *Id*.

Judge Der-Yeghiayan also relied on *Kline v. Hughes*, 131 F.3d 708 (7th Cir. 1997), in which the Seventh Circuit determined that, under Indiana's statutory scheme, political affiliation was an appropriate requirement for the deputy county auditor's job, because "a deputy county auditor may perform all the official duties of the county auditor" and "plays a vital role in the implementation of the county auditor's policies." *Id*. at 710. Judge Der-Yeghiayan determined that, "[s]imilarly, in the instant action, the Illinois statutory scheme and Illinois court precedent make clear that the deputy assessor position plays a part in the implementation of an assessor's policies and has meaningful input into governmental decisionmaking on issues where there is room for principled disagreement on goals or their implementation." [43] at 7-8. Further, according to Judge Der-Yeghiayan's analysis, "Plaintiffs [did] not show[] that there are any material distinctions between the Illinois and Indiana statutory schemes. *Id*. at 8. Judge Der-Yeghiayan therefore granted Defendants' motion to dismiss the Deputy Assessors' First Amendment retaliation claim, as well as other claims.

Plaintiffs moved for reconsideration as to the First Amendment claim, see [44], which Judge Der-Yeghiayan denied, see [60]. The case was transferred to this Court for all further proceedings after Judge Der-Yeghiayan's retirement. At the time of the transfer, Plaintiffs' second motion for reconsideration was pending.

The Court considers Plaintiffs' motion under Rule 59(e) of the Federal Rules of Civil Procedure, which allows a party to direct the court's attention to a "manifest error of law or fact or to newly discovered evidence." *United States v. Resnick,* 594 F.3d 562, 568 (7th Cir. 2010). "A 'manifest error' occurs when the district court commits a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir.

2015) (quoting *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000)). "Whether to grant a motion to reconsider is a matter squarely within the Court's discretion." *Ritacca v. Storz Medical, A.G.*, 298 F.R.D. 566, 569 (N.D. Ill. 2014). "A judge may reexamine his earlier ruling (or the ruling of a judge previously assigned to the case)" if "he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefited from it." *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995).

Plaintiffs' second motion for reconsideration is based on Judge Tharp's opinion in *McCarragher v. Ditton*, No. 14-cv-8591 ("*McCarragher*"), which also involved a First Amendment retaliation claim brought by a township deputy assessor. Judge Tharp declined to follow Judge Der-Yeghiayan's reasoning from this case. Judge Tharp determined that *Cutmore* was not controlling, because it held only that making property assessments involves some measure of discretion and judgment and did not answer "the question posed by the policy-making exception," namely, "whether the employee can make discretionary *policy* decisions *** such that political affiliation is an 'appropriate requirement' for effective performance of that job." [106-1] at 10. Judge Tharp also had a different take on the applicability of *Kline*. Whereas Indiana law authorizes a deputy county auditor to "perform *all* of the official duties of the county auditor," Judge Tharp explained, Illinois' "statutory scheme suggests the opposite scenario: that only the Township Assessor may hire and fire, prepare the budget, or perform any function besides making assessments" and that "even if the Township Assessor slot is vacated, no deputy takes over his or her responsibilities, even temporarily." *Id*. at 11.

Upon careful review of Judge Der-Yeghiayan's and Judge Tharp's opinions, the authorities they cite, and the parties' briefs, the Court concludes that Plaintiffs' First Amendment retaliation claim should not have been dismissed at the pleading stage. "In determining whether a government official is a policymaker, we examine "the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office." *Davis v. Ockomon*, 668 F.3d 473, 478 (7th Cir. 2012). Although in some cases these powers may be clearly defined by statute or ordinance, "[t]he question of whether a position is exempted from the First Amendment patronage dismissal ban is a factual one that should ordinarily be left for a jury to determine." *Pleva v. Norquist*, 195 F.3d 905, 912 (7th Cir. 1999).

Under Illinois' statutory scheme, township deputy assessors are authorized to make assessments of the value of real property in the township. See 35 ILCS 200/9-155 ("the assessor, in person or by deputy," shall make assessments using the formula set out by statute); 35 ILCS 200/2-65 ("In all counties under township organization where a township *** assessor is unable alone to perform all duties of the office, he or she may appoint one or more suitable persons as deputies to assist in making the assessment, and may appoint other employees required for operation of the office."). However, the deputy assessor is not statutorily authorized to perform all of the assessor's duties. Only the assessor is authorized to prepare the budget (see 35 ILCS 200/2-30), and if the assessor's position is vacant, the deputy assessor does not succeed the successor but rather a new assessor, from the same political party as the person vacating the office, must be appointed (see 35 ILCS 200/2-60). That distinguishes Illinois' statutory scheme from Indiana's, which the Seventh Circuit considered in *Kline*, 131 F.3d at 710. The Indiana statute governing deputy county auditors, by contrast, provides that "[a] deputy appointed under this chapter may perform all the official duties of the officer who appointed the deputy and is subject

4

to the same regulations and penalties as the officer," and "[t]he officer appointing the deputy is responsible for all the official acts of the deputy." IC 36-2-16-3. Defendants do not identify, and the Court has not found, any Illinois statutes granting similar broad powers to township deputy assessors.

Beyond the statutory scheme, Defendants have not identified any ordinance, job description, or other formal or informal source of authority that grants township deputy assessors any authority over policymaking. And according to the complaint, Plaintiffs had no policymaking authority. Rather, according to Plaintiffs, their "positions with the Milton Township Assessor's Office did not provide them with any policymaking authority" and "[l]ower level Deputy Assessors are not authorized to advise the Assessor on policy issues." [65] at 11-12.

Further, as Judge Tharp determined in *McCarragher*, "it is not clear what policy goals or political agenda the Assessor's office is tasked with or has influence over," because "[n]o one ever says." [106-1] at 13. "Without knowing what the policymaking role even of the elected Assessor are, this Court cannot conclude on the pleadings that [a Milton] Township deputy assessor is, as a matter of law, inherently empowered to have meaningful input in discretionary governmental decision-making or authority over policy." *Id*. *Cutmore* does not change this conclusion. That case had nothing to do with the First Amendment or the policymaker exception and held only that deputy assessors' assessment of real property requires "examination, discretion, judgment, and determination of value" and therefore deputy assessors should not be considered "clerks" under Illinois' statutory scheme. As Judge Der-Yeghiayan correctly recognized elsewhere in his opinion, not all jobs that require the use of discretion are policymaking positions. See [43] at 5. "[P]ositions requiring the exercise of professional rather than political discretion do not properly fall within the policymaker exception." *Davis v. Ockomon*, 668 F.3d 473, 477 (7th Cir. 2012). The Court cannot determine at this early stage of the case which category Milton Township Deputy Assessors fall into, and therefore concludes that it was error to dismiss Plaintiffs' First Amendment retaliation claim.

Finally, the Court considers whether Defendants will suffer any "undue harm" if the First Amendment claim is reinstated. *Avitia*, 49 F.3d at 1227. The Court concludes that they would not. It benefits all of the parties to resolve this issue now, rather than on appeal after the case has concluded in this Court. This case is still in the pleading stage and Plaintiffs' First Amendment claim was going to go forward in part (based on Popa's termination) regardless of the Court's ruling on the motion for reconsideration. Therefore, the Court grants Plaintiffs' motion and reinstates the First Amendment retaliation claim.

5

## **CONCLUSION**

  For these reasons, Plaintiffs second motion for reconsideration [106] is granted. Count I of Plaintiffs' complaint, for First Amendment retaliation, is reinstated. This case is set for status hearing on October 23, 2018 at 9:45 a.m.

Dated: October 3, 2018

_____
Robert M. Dow, Jr.
United States District Judge